UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| TAMMY ALIFF, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 19-013-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| PRUDENTIAL INSURANCE | ) | **MEMORANDUM OPINION** |
| COMPANY OF AMERICA, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Plaintiff Tammy Aliff brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, challenging Defendant Prudential Insurance Company of America's ("Prudential") denial of her claim for benefits under a long-term disability plan. The matter is currently pending for consideration of Aliff's motion to compel discovery. [Record No. 22] Because the defendant is both evaluator and payor of Aliff's claim, limited discovery will be allowed.

**I.**

Aliff obtained long-term disability ("LTD") insurance from Prudential during her employment with Catholic Health Initiatives ("CHI"). [Record No. 1-1, ¶ 10] Aliff was awarded long-term disability ("LTD") benefits after becoming unable to work in August 2015. *Id.* at ¶ 14. However, the defendant eventually determined that Aliff was no longer eligible for LTD and terminated those benefits in January 2018. *Id.* at ¶ 16.

Aliff also obtained a life insurance policy from Prudential in connection with her employment with CHI. *Id.* at ¶ 24. The life insurance policy contains a waiver of premium

("WOP") provision whereby premiums are waived if the defendant is disabled. Aliff submitted a WOP claim, which Prudential denied in December 2016. *Id.* at ¶¶ 28-32.

Aliff exhausted her administrative appeals and then filed this action seeking to reverse the defendant's decisions. *Id.* at ¶ 19-20, 34. Following the entry of a Scheduling Order, Aliff served the defendant with interrogatories and requests for production of documents. However, the defendant only partially responded to the discovery requests, advising Aliff that she was not entitled to all of the information requested. [Record No. 22-3]

## II.

A district court's review of an ERISA-based claim typically is limited to the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). However, when a claimant makes a procedural challenge to an administrator's decision, such as a challenge based on bias, limited discovery may be appropriate. *Bell v. Ameritech Sickness & Acc. Disability Ins. Plan*, 399 F. App'x 991, 996-97 (6th Cir. 2010) (citing *Wilkins*, 150 F.3d at 619). "When the same entity determines eligibility for benefits and also pays those benefits out of its own pocket, an inherent conflict of interest arises." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009) (citing *Metro. Life Insurance Co. v. Glenn*, 554 U.S. 105, 108 (2008)). Here, Aliff alleges (and Prudential does not dispute) that Prudential both determined whether Aliff was eligible for benefits and paid those benefits from its own funds.

Based on this inherent conflict, Aliff may conduct some discovery to enable the Court to determine whether such conflict affected Prudential's benefit decisions. *Busch v. Hartford Life & Acc. Ins. Co.*, No. 5:10-00111-KKC, 2010 WL 3842367 (E.D. Ky. Sept. 27, 2010) (citing *Hays v. Provident Life & Acc. Ins. Co.*, 623 F. Supp. 2d 840 (E.D. Ky. 2008)). The

scope of discovery, however, will be limited to the conflict of interest or any allegations of bias. *Id.* at *3 (citing *McQueen v. Life Ins. Co. of N. Am.*, 595 F. Supp. 2d 752, 755 (E.D. Ky. 2009)).

## III.

Aliff contends that Prudential has not responded satisfactorily to the following requests:

INTERROGATORY NO. 14

With respect to each entity providing a medical opinion:

a. State the number of medical opinions provided by the entity to the Defendant in the past 10 years;
b. State the total compensation Defendant paid to the entity to date over the past 10 years;
c. State the number of medical opinions that supported Defendant's decision to deny a claim in the past 10 years;
d. State the number of medical opinions that did not support Defendant's decision to deny a claim in the past 10 years; and
e. State the number of times in the past 10 years that the entity provided a medical opinion that a claimant was able to work in at least a sedentary occupation or found that a claimant was not disabled.

INTERROGATORY NO. 15

For each individual providing a medical opinion ("medical reviewer"):

a. Provide the medical reviewer's full name, business address, employer, job title (description), and relationship (if any) with Defendant;
b. State the number of medical opinions the medical reviewer has provided to Defendant in the past 10 years;
c. State the number of medical opinions the medical reviewer has provided to Defendant that supported Defendant's decision to deny a claim in the past 10 years;
d. State the number of medical opinions the medical reviewer has provided to Defendant that did not support Defendant's decision to deny a claim in the past 10 years;
e. State and describe in detail the compensation the medical reviewer was paid for the medical opinion provided to Defendant related to Plaintiff's claims;
f. State the total compensation the medical reviewer has been paid to date for medical opinions provided to Defendant in the past 10 years; and

g.  State and explain in detail the steps taken to ensure the medical reviewer's report related to Plaintiff's claims was not altered and/or edited prior to submission to Defendant.

REQUEST NO. 5: Internal rules, guidelines, protocols, or other similar criterion relied upon in making the adverse determination on Plaintiff's claims.

REQUEST NO. 6: Claim administration materials and manuals utilized by the long-term disability claims unit in processing Plaintiff's claim and appeals.

REQUEST NO. 7: Claims administration materials and manuals utilized by the life waiver of premium claims unit in processing Plaintiff's claim and appeals.

REQUEST NO. 8: Training materials and manuals utilized by the long-term disability claims unit in processing Plaintiff's claim and appeals.

REQUEST NO. 9: Training materials and manuals utilized by the life waiver of premium claims unit in processing Plaintiff's claim and appeals.

REQUEST NO. 10: Disability claim unit organizational structure for the individuals (including job title) in the claims unit at the time Defendant denied Plaintiff's LTD claim.

REQUEST NO. 11: Disability appeal unit organizational structure for the individuals (including job title) in the claims unit at the time Defendant denied Plaintiff's LTD appeals.

REQUEST NO. 12: Life waiver of premium claim unit organizational structure for the individuals (including job title) in the claims unit at the time Defendant denied Plaintiff's WOP claim.

REQUEST NO. 13: Life waiver of premium appeal unit organizational structure for the individuals (including job title) in the claims unit at the time Defendant denied Plaintiff's WOP appeals.

REQUEST NO. 14: Each document identifying Defendant's administrative processes and safeguards designed to ensure the fair and proper administration of claims.

REQUEST NO. 15: Each entity providing a medical opinion, including but not limited to:
a.  Contracts, including but not limited to, compensation and instructions or guidelines given on how to perform review;
b.  Drafts and final reports, including all edits, audits, and quality review;

  c. Dictated opinions (recording and actual draft from dictation);
  d. Correspondence between the entity and insurer (emails, notes, letters, instant messaging, etc.);
  e. Documents provided to the entity relating to Plaintiff's claims and appeals; and
  f. For the period of the past 10 years, documents identifying the number of times Defendant has used the entity and the number of times the entity has found the claimant not disabled or able to perform at least a sedentary occupation.

REQUEST NO. 16: Each individual providing a medical opinion ("medical reviewer"), including but not limited to:
  a. Contracts, including but not limited to, compensation and instructions or guidelines given on how to perform review;
  b. Drafts and final reports, including all edits, audits, and quality review;
  c. Dictated opinions (recording and actual draft from dictation);
  d. Correspondence between the entity and insurer (emails, notes, letters, instant messaging, etc.);
  e. Documents provided to the entity relating to Plaintiff's claims and appeals; and
  f. For the period of the past 10 years, documents identifying the number of times Defendant has used the medical reviewer and the number of times the medical reviewer has found the claimant not disabled or able to perform at least a sedentary occupation.

REQUEST NO. 17: Each entity providing a vocational opinion, including but not limited to:
  a. Contracts, including but not limited to, compensation and instructions or guidelines given on how to perform review;
  b. Drafts and final reports, including all edits, audits, and quality review;
  c. Dictated opinions (recording and actual draft from dictation);
  d. Correspondence between the entity and insurer (emails, notes, letters, instant messaging, etc.);
  e. Documents provided to the entity relating to Plaintiff's claims and appeals; and
  f. For the period of the past 10 years, documents identifying the number of times Defendant has used the medical reviewer and the number of times the medical reviewer has found the claimant not disabled or able to perform at least a sedentary occupation.

REQUEST NO. 18: Each individual providing a vocational opinion ("vocational reviewer"), including but not limited to:

      a.      Contracts, including but not limited to, compensation and instructions or guidelines given on how to perform review;
      b.      Drafts and final reports, including all edits, audits, and quality review;
      c.      Dictated opinions (recording and actual draft from dictation);
      d.      Correspondence between the vocational reviewer and insurer (emails, notes, letters, instant messaging, etc.);
      e.      Documents provided to the entity relating to Plaintiff's claims and appeals; and
      f.      For the period of the past 10 years, documents identifying the number of times Defendant has used the vocational reviewer and the number of times the medical reviewer has found the claimant not disabled or able to perform at least a sedentary occupation.

Prudential contends that the plaintiff "must make some showing of bias or procedural irregularity beyond mere conclusory allegations in the Complain to obtain discovery." [Record No. 23, p. 5] However, after the United States Supreme Court's decision in *Glenn*, 554 U.S. 105 (2008), the mere presence of a conflict of interest is enough to permit discovery beyond the administrative record. *McQueen*, 595 F. Supp. 2d at 754.

Prudential objects to the plaintiff's discovery requests on various grounds. First, it argues that the detailed information sought is not necessary to determine bias because it has "provided a verified statement that it separates financial and claims decisions." [Record No. 23, p. 6] It also maintains that it does not make decisions regarding employee or third-party vendor performance based on claim outcomes. However, the plaintiff is not required to take Prudential at its word with respect these issues. *See Hatfield v. Life Ins. Co. of N.A.*, No. 5: 14-432-DCR, 2015 WL 5722791, at *5 (E.D. Ky. Sept. 29, 2015). Plaintiffs like Aliff routinely have been permitted to conduct limited discovery when an inherent conflict of interest exists.

When determining whether a conflict of interest affected a benefits decision, the court may consider whether "(i) a history of biased denials exists; (ii) the employer has taken steps

to reduce potential bias and promote accuracy; and (iii) company policies formally or informally encourage claim denials." *Hatfield*, 2015 WL 5722791, at *3 (citing *Kasko v. Aetna Life Ins. Co.*, 33 F. Supp. 3d 782, 788 (E.D. Ky. 2014)). But as always, discovery must be proportional to the needs of the case. *See Scott-Warren v. Liberty Life Assurance Co. of Boston*, No. 3: 14-CV-738-CRS, 2016 WL 5661774, at *5 (W.D. Ky. Sept. 29, 2016). District courts within the Sixth Circuit have identified general areas of inquiry that inform these considerations: incentives or rewards involved in reviewing disability claims; financial payments to medical reviewers; statistical information regarding the number of claims sent to the reviewers and the number of denials that resulted; and the existence of administrative processes designed only to check the accuracy of granted claims. *Busch*, 2010 WL 3842367, at *4 (collecting cases).

Prudential contends that information concerning third-party medical and vocational reviewers is irrelevant because such information does not concern Prudential's conflict of interest. Prudential Life Insurance Company of America made the same argument in *Gluc v. Prudential Life Ins. Co. of Am.*, 309 F.R.D. 406, 410 (W.D. Ky. 2015), but the argument was rejected by the court. The *Gluc* Court observed that "ERISA plaintiffs are permitted to obtain discovery related to third-party vendors whose opinions or reports may have been unduly influenced by financial incentives." 309 F.R.D. at 416. Because such information tends to shed light on the defendant's conflict or bias, discovery may include information about "compensation arrangements between the plan administrator and third-party vendors, contractual connections, annual financial payments and statistical data about the number of claims sent to the same reviewers and the number of denials resulting therefrom." *Id.*

As Prudential points out, courts have refused to permit discovery regarding general issues of reviewer credibility. *Davis v. Hartford Life & Acc. Ins. Co.*, No. 3: 14-CV-507-TBR, 2015 WL 7571905 (W.D. Ky. Nov. 24, 2015). Accordingly, personnel files, employee pay records, and the professional background of reviewers typically is not discoverable. *Id.* Aliff, however, does not seek information related to the reviewers' credibility. Instead, she seeks information related to any incentives to deny claims that Prudential has offered the reviewers, as well as statistical information regarding the third-party vendors' denial of claims.

Prudential also argues that the requests are overly broad and unduly burdensome. [Record No. 22-3] However, courts have routinely permitted such discovery in conflict-of-interest cases. *See McQueen*, 595 F. Supp. 2d at 755-56; *Hatfield*, 2015 WL 5722791, at *4 (plaintiff was allowed to obtain statistical evidence going back 10 years for individuals and entities who handled the plaintiff's most recent denial and appeal); *Pemberton v. Reliance Standard Life Ins. Co.*, No. 08-086-JBC, 2009 WL 89696, at *2 (E.D. Ky. Jan. 13, 2009) (same). The defendant's failure to maintain statistical information concerning its rate of claim denials not a reason to preclude discovery of this information. Consequently, Prudential will be required to disclose this information to the plaintiff.

Next, Prudential claims that it cannot disclose some of the documents sought because it does not have access to them. Clearly, Prudential cannot be compelled to disclose documents of which it does not have possession, custody, or control. *See Gluc,* at 416-17 (Prudential was not required to disclose third-party vendors' draft reports, dictation opinions, correspondence and e-mail, diary entries and statistical reports because Prudential did not have custody or control and had no legal right to obtain them). But to the extent the defendant possesses or

may obtain the information sought concerning the medical and vocational reviewers, it shall directed to produce this information to the plaintiff.

Prudential also objects to the interrogatories, arguing that, when the subparts are counted, they exceed the twenty-five permitted under Rule 33(a) of the Federal Rules of Civil Procedure. However, the rule provides that "discrete" subparts are counted as separate interrogatories. Interrogatory subparts count as one interrogatory when they are "logically and factually related to the primary question." *Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 516 (W.D. Ky. 2010). Here, although some of the interrogatories seek multiple pieces of information, each is confined to a single topic. Accordingly, the plaintiff served 24 interrogatories, and the defendant's objections based on numerosity will be overruled.

Finally, the Court rejects the defendant's assertion that the plaintiff's motion to compel is premature. Aliff had already received one extension of time in which to file a motion concerning discovery. [Record No. 20] E-mail correspondence indicates that Aliff's attorney attempted to work with Prudential's counsel to resolve discovery issues prior to the deadline. When the parties had not reached an agreement concerning discovery and/or a potential protective order, Aliff had no reasonable choice other than to file the motion to compel by the deadline for doing so.

To the extent Prudential believes some of the information sought constitutes trade secret or other confidential business information, the parties may seek entry of a protective order prior to disclosure of the information.

**IV.**

Based on the foregoing, it is hereby

**ORDERED** as follows:

1. The plaintiff's motion to compel [Record No. 22] is **GRANTED** with respect to information pertaining to the defendant's alleged conflict of interest and alleged bias, as described above.

2. The February 26, 2019 Scheduling Order [Record No. 12] is **AMENDED** as follows:

    A. The parties may tender a proposed agreed protective order **on or before Wednesday, September 11, 2019**.

    B. The parties have until **Friday, October 11, 2019**, to complete discovery in accordance with this order.

    C. The parties are directed to file motions for judgment on or before **Wednesday, December 11, 2019**. Responses are due within **thirty (30) days** after the motions for judgment are filed. Replies are due within **fifteen (15) days** after the parties file response briefs.

Dated: September 4, 2019.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky